Elmer David **MILLER**, Appellant

v.

**COMMONWEALTH of Kentucky,** Appellee.

No. 2011–SC–000030–DG.

Supreme Court of Kentucky.

Feb. 21, 2013.

John Richard Clay, Clay & Clay, Danville, KY, Counsel for Appellant.

Jack Conway, Attorney General, Julie Scott Jernigan, Assistant Attorney General, Office of Criminal Appeals, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice NOBLE.

The Appellant Elmer David Miller was convicted of a misdemeanor and probated for the two-year statutory maximum on the condition that he attend counseling recommended by the Office of Probation and Parole. That office recommended that he enroll in the state's three-year sex offender treatment program required for felony sex offenders. At issue is whether his probation can be revoked for failing to do the impossible, that is, complete the program before his probation ended, and whether there are other options, such as extension of the probationary period, available. This Court concludes that Miller cannot be required to complete a program that extends beyond his period of probation, that he has completed his probation, and he is discharged from it as a matter of law.

## I. Background

Miller was originally arrested for and charged by uniform citation with three offenses, which included first-degree unlaw-

ful transaction with a minor under the age of sixteen, in 2005. As charged, the crime was a Class B felony. *See* KRS 530.064(2)(b). However, the subsequent indictment included only a single charge for a slightly different crime: *criminal attempt* to commit first-degree unlawful transaction with a minor under the age of sixteen, which was a Class C felony. *See* KRS 506.010. The Commonwealth's pretrial discovery materials revealed that the victim was actually sixteen years old at the time of the crime.

Miller eventually entered into a plea agreement under which he was convicted of criminal attempt to commit first-degree unlawful transaction with a minor, which, because of the victim's actual age, was only a Class A misdemeanor. *See* KRS 530.064(2)(a) (making unlawful transaction a Class C felony when the victim is between sixteen and eighteen); KRS 506.010(4)(d) ("A criminal attempt is a ... Class A misdemeanor when the crime attempted is a Class C or D felony....").

On October 27, 2006, Miller was sentenced to twelve months in jail to be probated for two years. As a condition of probation, Miller was ordered to "[a]ttend any counseling recommended by probation and parole."

Though the appellate record is not clear, it can be inferred that Probation and Parole recommended that Miller enroll in the state's sex offender treatment program.[1] Miller did so, though not until "February 2007 after a delay ... through no fault of his own" according to the Special Supervision Report filed later. But, according to an affidavit filed by a Probation and Parole Officer, that "program generally lasts longer than two years." In fact, a letter from the sex offender treatment program's director states that the program usually takes three years to complete.

Shortly before the probation period was over, the Probation and Parole Officer informed the trial court, via the affidavit, that Miller would be unable to complete the program before his probation expired. The officer also asked that Miller's sentence be modified to extend his probation until he could complete the program. A summons was issued and the matter was set for a hearing on October 24, 2008.

At the hearing, the trial court ordered briefing on the question of whether probation could be extended beyond the two-year limit for misdemeanors in KRS 533.020(4). The briefs were not due until after the date on which Miller's probation was set to expire. After the briefs were filed, the court entered an order on January 20, 2009, extending Miller's probation until he completed the sex offender treatment program.

In reaching this decision, the court noted that Miller had agreed as a condition of probation to complete the program during his probation and had failed to do so. This, the court said, left two options: (1) revoke probation for non-compliance, or (2) extend the probation either on an implied waiver based on the plea agreement or under the authority of KRS 532.045(4), which requires completion of sex offender treatment as a condition of probation for sex crimes. The court chose to extend the probation, stating that both theories (waiver and statutory requirement) were sufficient to allow it.

The Court of Appeals reversed. It held that Miller had never agreed to extend his probation and had, in fact, opposed the

---

1. According to a statement in the trial court's order extending probation, Probation and Parole believed that completing such a program was a statutory condition of his probation under KRS 532.045.

extension at the later hearing. As to KRS 532.045(4), the court noted that the statute had not been referenced when Miller was originally probated, though he was obligated to complete any treatment recommended by Probation and Parole. The court held that KRS 532.045 did not allow extension of probation; instead, violating the statute's requirement could only be grounds for revoking probation. The court also noted in passing that the trial court's reliance on KRS 532.045 was troubling because that statute requires a comprehensive sex offender presentence evaluation before imposing sentence and the defendant's opportunity to challenge the evaluation, but no such evaluation was done in this case. Despite reversing, the court remanded the case for the trial court to decide whether probation should have been allowed to expire or be revoked because Miller failed to complete the sex offender treatment program.

Miller moved this Court to grant discretionary review to determine whether the Court of Appeals erred in remanding the case for further proceedings that could include revocation of his probation. The Commonwealth did not file a cross-motion challenging the Court of Appeals' reversal of the extension of probation. This Court granted discretionary review.

The Commonwealth states in its brief that Miller has completed the sex offender treatment program, though nothing in the record confirms this. Given the length of time that has passed, however, this assertion is very likely true. This does not moot this case, however, because it is presently set for remand at which time Miller could face revocation of his probation.

## II. Analysis

The issue in this case seems fairly straightforward: can a trial court revoke a misdemeanor defendant's probation at the end of the probationary period, which may not exceed two years, for that defendant's failure to complete a three-year sex offender treatment program? The specific circumstances of this case make that a more complicated question than it seems at first. Nevertheless, we hold that under the circumstances presented by this case, the trial court does not have the option to revoke Miller's probation on remand and the only option at the time his probation period expired, absent some other probation violation, was to deem him finally discharged from probation.

Though much of oral argument was dedicated to the other question addressed by the Court of Appeals—namely, whether a misdemeanant under Miller's circumstances can have his probation extended past the statutory limit until he completes sex offender treatment—that issue has not been raised at this Court. In fact, the Commonwealth concedes that the Court of Appeals was correct on this issue, stating that it "believes that the Court of Appeals correctly determined that the trial court was not authorized to extend the probation without Appellant's consent...." No doubt, this was why the Commonwealth did not file its own motion for discretionary review.

Nevertheless, we must still address the issue. Otherwise, we would be deciding a false dilemma or dichotomy, that is, whether the trial court must choose between only two outcomes (revocation or expiration of probation). If the trial court was correct that it could extend probation, then a third option was and should still be available to it. Under these circumstances, this Court will address the options available at the expiration of a period of probation.

That said, we agree with the Court of Appeals and the Commonwealth that the trial court could not extend Miller's proba-

tionary period, and that the trial court's order should have been vacated. While "[t]he period of probation ... may be extended ... by duly entered court order," it is clear that the probation "period, with extensions thereof, shall not exceed ... two (2) years ... upon conviction of a misdemeanor."[2] KRS 533.020(4). The two-year limit is an absolute limit, absent some overriding statute or waiver by the defendant. *See Commonwealth v. Griffin,* 942 S.W.2d 289, 291 (Ky.1997) (noting that a trial court retains jurisdiction over its own probation judgment "provided it is not precluded by any statute from doing so" and may still extend probation at the defendant's request, provided there is time remaining on the period of probation). Neither of these is the case.

The trial court suggested that the two-year limit was trumped by KRS 532.045, which states that when a court grants probation, "the offender shall be required, as a condition of probation ..., to successfully complete a community-based sexual offender treatment program operated or approved by the Department of Corrections or the Sex Offender Risk Assessment Advisory Board." KRS 532.045(4). Probation and Parole also believed this statute applied to Miller. But this statute applies only "[i]f the defendant has been convicted of a sex crime, as defined in KRS 17.500," and been probated for that offense. KRS 532.050.[3]

And Miller was not convicted of a sex crime. KRS 17.500 defines "sex crime," in relevant part, as:

(a) A felony offense defined in KRS Chapter ˙ 510, or KRS 530.020, 530.064(1)(a), 531.310, or 531.320; [or]

(b) A felony attempt to commit a felony offense specified in paragraph (a) of this subsection....

KRS 17.500(8) (emphasis added).[4]

Miller was originally charged with a sex crime, namely, unlawful transaction with a minor. That crime is created by KRS 530.064, which is specifically listed under subsection (a) above. Had he been convicted of that offense, he would have been convicted of a "sex crime," and the sex offender treatment requirements would apply as a result.

■ But Miller was actually convicted of *criminal attempt* to commit that crime/ This is a separate, inchoate offense created by KRS 506.010. Unlike complicity to a crime, which is simply a means to commit the other crime and results in conviction for the other crime, criminal attempt is a separate crime. While criminal attempts at the offenses listed in subsection (a) are included as sex crimes under subsection (b), they must be *felony* attempts. (Indeed, as presently defined, the term "sex crime" can apply only to felonies.)

2. The statute includes one exception not applicable to this case. Probation may be extended beyond two years if "necessary to complete restitution." KRS 533.020(4).

3. The Commonwealth argued to the trial court that KRS 532.045(4) applied because Miller was a sex offender. The trial court did not resolve this issue specifically, though it did state in its order extending probation that completion of the treatment program "is required by KRS 532.045(4)." And, of course, that the trial court believed KRS 532.045(4) trumped the two-year limit shows that it necessarily believed that statute applied and that Miller was thus a sex offender.

4. The term "sex crime" also includes "[a] federal felony offense, a felony offense subject to a court-martial of the United States Armed Forces, or a felony offense from another state or a territory where the felony offense is similar to a felony offense specified in paragraph (a) of this subsection...." This provision is clearly not applicable to Miller.

Yet Miller was convicted of a *misdemeanor* attempt to commit an offense under KRS 530.064. Thus, the crime Miller was convicted of was not a "sex crime" as defined in the statutes, meaning he was not statutorily required to complete sex offender treatment as a condition of his probation.

As to whether Miller consented to having his probation extended, we have suggested in the past that a defendant can agree to probation exceeding the statutory limit when it is to his benefit. *See Griffin,* 942 S.W.2d at 291. But in that case, we stated this exception applied when the "extension of a probationary period [is] *knowingly and voluntarily* requested by a defendant," and went so far as to distinguish two other cases because "[t]here [wa]s no suggestion [in those cases] . . . that the defendant voluntarily sought the extension." *Id.*

Here, it is clear not only that Miller did not request the extension, but that he in no way agreed to it. In fact, Miller opposed the extension when it was requested by the Commonwealth. The trial court's suggestion that Miller agreed to any extension on the front end by accepting a plea bargain that included sex offender treatment as a *probation* condition is simply wrong. First, the trial court did not require Miller to complete sex offender treatment; it only required that he attend counseling recommended by Probation and Parole. Miller did so. Second, even if that condition could be read to require completion of sex offender treatment, there is no proof that Miller was informed that the program would take more than the two years he was probated. *Griffin* requires the defendant's knowing and voluntary consent.

Moreover, allowing the length of the treatment program to trump the probation length limit would give the executive branch arbitrary control over something within the exclusive purview of the legislative and judicial branches. The sex offender treatment program is controlled by the executive branch (specifically the Department of Corrections or the Sex Offender Risk Assessment Advisory Board). *See* KRS 532.045(4). The legislative branch gets to set the maximum length of all probationary periods, if it so chooses. It has done so. The judicial branch gets to set individual probationary periods, though it is bound by the limits set by the legislature. It did so in this case, at least initially.

■ The executive branch cannot, through its control over the sex offender treatment program, expand probation beyond the statutory limits set by the legislature. While doing so in this case required assistance by the judiciary, it is no less a violation of the separation of powers in Sections 27 and 28 of our Constitution.

Fortunately, the executive branch has crafted a sex offender treatment program that is unlikely to run up against the legislature's probation limits when that program is statutorily required. As noted above, the treatment is a statutory probation requirement only when the defendant is convicted of a sex crime, and only felonies can be sex crimes. When a defendant is convicted of a felony, the probationary period can extend to five years, KRS 533.020(4), which should be ample time for defendants to complete any required sex offender treatment programs.

With the third option of extending probation unavailable, the main question in this case remains. Can Miller's case be remanded to the trial court to decide whether to revoke his probation?

Miller argues that the trial court lost jurisdiction over his case on October 27, 2008—the end of his two-year probation

period—and thus its orders after that date are void. He thus suggests that any further orders, even those on remand, would be outside the trial court's jurisdiction. The Commonwealth argues that this claim was waived and that the trial court had jurisdiction anyway.

 The Commonwealth argues that Miller waived this jurisdictional claim because he did not object to briefing the probation-extension issue at the trial court and did not refuse to file his brief, which the court had ordered, on the grounds of no jurisdiction. This claim has no merit. A litigant is not required to ignore a court order to preserve a claim. As with other issues, the litigant need only object or otherwise bring the issue to the trial court's attention.[5] Miller did so in his memorandum opposing extension of his probation. There he explicitly stated that the trial court lost jurisdiction over his probation on October 27, 2008, and cited *Curtsinger v. Commonwealth*, 549 S.W.2d 515 (Ky.1977), for that proposition. And the trial court implicitly denied this claim by issuing orders affecting Miller's probation after its end date. This was sufficient to preserve the jurisdictional claim for appellate review.

 As to the merits of the jurisdictional claim, the Commonwealth asserts—without citation to any authority—that Miller "fails to acknowledge that, to retain jurisdiction, the court is only required to conduct a hearing within the probationary period" and that "the case law does not require that the [c]ourt issue [o]rders within the probationary period." What the Commonwealth fails to acknowledge is the authority cited by Miller in which this

Court has stated unequivocally "that *revocation* must occur 'prior to the expiration ... of probation.'" *Conrad v. Evridge*, 315 S.W.3d 313, 315 (Ky.2010) (quoting KRS 533.020(1)) (omission in original, emphasis added). That opinion goes on to state that both the hearing *and* the revocation must occur "before the probationary period expires" and that "[t]he circuit court has no jurisdiction to revoke ... probation, or to hold a revocation hearing, after that time." *Id.* (citing *Curtsinger*, 549 S.W.2d at 516). Near the end of the opinion, this Court repeated more strongly the statement that the *revocation* must occur before the end of the probationary period: "The statutes are clear that probation must be revoked, if at all, before the probationary period expires. This Court rejects the Commonwealth's invitation to ignore this plain language." *Id.* at 317. Where revocation has not occurred before the end of the probation period, "the defendant shall be deemed finally discharged" by operation of law. KRS 533.020(4); *see also Curtsinger*, 549 S.W.2d at 516 (stating that jurisdiction ceases "by operation of statute" at that time).

The fact that the trial court's decision has been reversed and remand ordered cannot change the fact that revocation cannot occur at this point. Had the trial court's decision been rendered before the end of Miller's revocation period, a different result *might* be allowed, since the trial court's decision could be treated as stopping the running of time and the appeal would simply reset the case to its status before the trial court ruled. But we need not decide that question because those facts did not occur here. In fact, the trial

---

5. Though this is a "jurisdictional" issue, it is not the type subject to waiver and can be raised at any time, i.e., true subject matter jurisdiction. *See Commonwealth v. Griffin*, 942 S.W.2d 289, 290–91 (Ky.1997). The ju-

risdiction retained to affect a judgment imposing probation is jurisdiction over "this case" or "*a particular case*," not "this *kind* of case." *Id.*

court's order came several months after the expiration of Miller's probationary period. Because that period could not lawfully be extended beyond the two-year mark, Miller's probation was discharged as a matter of law on October 27, 2008. Neither the filing of a motion to extend or revoke probation, or a hearing on such a motion is sufficient to stop the running of a probationer's time under *Conrad.*

Nevertheless, because one function of this Court's opinions is the education of the bench and bar, it is worth examining whether Miller's probation could have been revoked based on the affidavit and other documents filed by Probation and Parole in this case.

With the third option of extension removed as a possibility, the trial court would have been left with the dichotomy suggested by the Court of Appeals: revocation of probation or allowing the probation to expire by its own terms. The Court of Appeals held that the trial court would have to choose between these options. However, this is incorrect, because the record shows that only one of those options would be available.

The trial court suggested that Miller would be in violation of his probation absent an extension because he had not yet completed the sex offender treatment program. Underlying this is the assumption that Miller's probation was conditioned on his completing sex offender treatment. In fact, at one point in its order, the trial court stated that Miller "agreed to complete it [sex offender treatment] as a condition of probation." And the Commonwealth continues to argue that "when he completed his guilty plea to the charges, he did so knowing that he was required to entered [sic] and COMPLETE a Sex Offender Treatment Program."

Nothing in the law or this record suggests that was the case.

First, as discussed above, Miller was not convicted of a sex crime. His conviction was for the misdemeanor offense of criminal attempt to commit a sex crime. Therefore, he was not statutorily required to complete sex offender treatment as a condition of parole.

Second, the trial court's probation order did not require Miller to complete sex offender treatment. Instead, the order conditioned Miller's probation on his "[a]ttend[ing] any counseling recommended by probation and parole." The order said nothing about completing such counseling. That condition only appeared when Probation and Parole recommended that Miller complete sex offender treatment, which Probation and Parole believed, incorrectly, was required by statute.

Thus, the trial court was wrong when it later concluded that Miller had agreed to complete sex offender treatment as a condition of probation. Instead, he had agreed only to attend Probation and Parole's *recommended counseling, which* ended up being the state's sex offender treatment program.

Miller complied with this requirement. In fact, at the time of the probation extension, the trial court stated: "Defendant is currently attending an SOTP [sex offender treatment program]." The record supports this finding. The Probation and Parole Officer's affidavit, which set all of this in motion, stated that Miller "ha[d] been attending [the] sex offender treatment program since ordered to do so in 2006." The officer's special supervision report stated that Miller began the program in February 2007. It also said: "His most recent progress report for May through August 2008 indicates that he is doing well in treatment, but indicates that he must retake a polygraph in relation to his of-

fenses." [6] Finally, the letter from the sex offender treatment program's director, dated October 29, 2008, states that "Miller has been compliant with all requirements of the treatment program up to this point."

Simply put, Miller did not violate his probation conditions. The only alleged violation brought to the trial court before the expiration of the probationary period was related to Miller's completion of this program. The trial court's order did not require him to complete the program, and he complied with the actual requirement that he attend a program recommended by Probation and Parole.

This would leave but one option. Because Miller's probation could not be extended without him requesting and consenting to it, and he was not in violation of any of the conditions of his probation, the trial court would have been bound to allow Miller's probation to expire, absent some other violation, and to discharge him upon its conclusion.

### III. Conclusion

For the foregoing reasons, the Court of Appeals is affirmed in part, but to the extent that the Court of Appeals remanded this case to the trial court for a determination of whether Miller's probation should be revoked, its judgment is reversed. This case is remanded to the Lincoln Circuit Court with directions that the Appellant Elmer David Miller be deemed discharged from probation.

MINTON, C.J.; ABRAMSON, CUNNINGHAM, SCOTT and VENTERS, JJ.,

sitting. All concur, except ABRAMSON, J., concurs in result only.

---

6. The next line of that report is telling of why this review of this case was necessary. It states: *"It is usually the case that a misdemeanant case* in sex offender treatment program must be extended on probation because the state-funded sex offender treatment program cannot be completed in less than two years."* (Emphasis added.) But, as our review of the relevant statutes shows, misdemeanants are not statutorily required to attend or complete the state-funded sex offender treatment program because their crimes are not included in the definition of "sex crime."